2000 OK JUD 1

**William H. MATTINGLY, Associate District Judge, Osage County, Oklahoma, Petitioner,**

v.

**The COURT ON the JUDICIARY, TRIAL DIVISION, Respondent.**

**No. CJAD–2000–1.**

Court on the Judiciary of Oklahoma, Appellate Division.

July 5, 2000.

---

W. Robert Wilson, Wilson & Payne, Pawhuska, Oklahoma, for Petitioner, William H. Mattingly, Associate District Judge, Osage County, Oklahoma.

W.A. Drew Edmondson, Attorney General of Oklahoma, Oklahoma City, Oklahoma and Cynthia L. Sparling, Short, Wiggins Margo & Adler, Oklahoma City, Oklahoma, for Respondent, Court on the Judiciary, Trial Division.

PER CURIAM.

### FACTS AND PROCEDURAL BACKGROUND

¶1 On February 10, 2000 the State of Oklahoma ex rel. W.A. Drew Edmondson, Attorney General of the State of Oklahoma, filed a petition in the Court on the Judiciary, Trial Division, against Petitioner here, William H. Mattingly. Judge Mattingly is the Associate District Judge in Osage County, Oklahoma. The Attorney General filed his petition on the basis of allegations supplied to him by the Council on Judicial Complaints and alleged that Judge Mattingly had delayed filing an order disposing of a divorce case for 115 days following the time the case

became at issue. The Attorney General alleged that the Court on the Judiciary's jurisdiction was based on Okla. Const. Art. 7–A § 4. Section 4 mandates that any petition invoking the jurisdiction of the Court on the Judiciary "shall state ... the grounds upon which his removal from office or compulsory retirement from office is sought." Nevertheless, the Attorney General did not allege that Judge Mattingly should either be removed from office or required to retire. Instead, the Attorney General alleged "that the above-enumerated acts by Respondent [Judge Mattingly] warrant discipline."

¶ 2 The Attorney General alleged that Judge Mattingly had violated Rule 27, Rules for District Courts, which provides, "In any matter taken under advisement, a decision shall be rendered within sixty (60) days of the date on which the matter was taken under advisement or, if briefs are to be submitted, within sixty (60) days of the date of the filing of the final brief...." It is undisputed that Judge Mattingly had filed his order about which the Council on Judicial Complaints and the Attorney General complain before the investigation of his conduct was begun.

¶ 3 The Attorney General also alleged as misconduct against Judge Mattingly the filing of other delinquent orders. One of these delinquent orders had been the subject of a request by the Council on Judicial Complaints, in 1998, to the Chief Justice of the Supreme Court to approve a private reprimand of Judge Mattingly. The Council on Judicial Complaints, however, dismissed its complaint when the Supreme Court called for briefs on the constitutionality of 20 O.S. Supp.1997 § 1658.[1] The 1997 amendment to § 1658 purported to invest the Council on Judicial Complaints, subject to the approval of the Chief Justice, with jurisdiction to "issue reprimands and admonitions."[2] According to the Attorney General's petition in the current action, although the Council on Judicial Complaints dismissed the complaint it had filed with the Chief Justice, the Council advised Judge Mattingly that, despite its having been dismissed, the Council's complaint against him would "become a part of the permanent record of the Judge."

¶ 4 On March 3, 2000, Judge Mattingly filed an answer, a motion to dismiss, alternative motion to strike or for summary judgment, and a supporting brief before the Court on the Judiciary, Trial Division. In his motion to dismiss, Judge Mattingly contended that the Council on Judicial Complaints and the Court on the Judiciary were without jurisdiction in the matter. The presiding judge of the Trial Division notified Judge Mattingly's counsel that Judge Mattingly's motions would not be specially set for hearing but instead would be considered by the court as a preliminary matter on the morning the matter was set for trial on the merits, April 24, 2000.

¶ 5 Judge Mattingly then filed this original action, contending that the Trial Division's

---

1. Title 20 O.S. Supp.1997 § 1658 provided in full as follows:

   The Council shall promptly investigate all complaints received by it, and shall determine the proper disposition thereof, as provided in Sections 1651 through 1661 of this title. To that end, it shall have power to hold hearings, administer oaths or affirmations, receive testimony and other evidence, issue and serve or cause to be served subpoenas requiring testimony or the production of books, records, papers or other tangible evidence and, if approved by the Chief Justice of the Supreme Court, *issue reprimands and admonitions*. The Council is hereby authorized to require in aid of its investigatory functions the services of the Oklahoma Bureau of Investigation or of any governmentally supported investigatory agency or, upon authorization of the Board of Governors of the Oklahoma Bar Association, of the services of the Oklahoma Bar Association. In the event of contemptuous refusal to obey its lawful orders, it may take such steps as are necessary to maintain order in its session; as to contempts not affecting the maintenance of order, it shall certify the matter to the Chief Justice of the Supreme Court, who shall assign the case for trial and appropriate disposition to a judge of a district court. In such proceeding, the General Counsel of the Oklahoma Bar Association shall act as prosecutor against the alleged contemnor. All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury; provided however, a reprimand or admonition to a judge who shall have previously received a reprimand or admonition shall, at the discretion of the Council, be made public.
   [Emphasis added.]

2. In 1999 the Legislature again amended 20 O.S. § 1658 and eliminated the power of the Council on Judicial Complaints to issue reprimands and admonitions under any circumstances. Title 20 O.S. Supp.1999 § 1658.

refusal to consider his motions questioning the jurisdiction of the Council on Judicial Complaints and the Court on the Judiciary before the morning the matter was set for trial on its merits deprived him of a remedy to seek relief from this Court. Judge Mattingly contended that if his motions were either denied or taken under advisement by the Trial Division he would be deprived of the right to seek an extraordinary writ from this Court. Judge Mattingly argued that a remedy by appeal after a trial on the merits would have been inadequate because the Trial Division would have proceeded to trial on the matter, although it lacked jurisdiction to do so.

¶ 6 On March 30, 2000, Judge Mattingly filed in this Court an application to assume original jurisdiction, a petition for writ of prohibition, and for an order staying proceedings in the Trial Division. On April 18, 2000, we entered an order assuming original jurisdiction and staying all proceedings in the Trial Division until further order of the Court.

## ISSUE

¶ 7 Do the Council on Judicial Complaints and the Court on the Judiciary have jurisdiction to consider matters concerning the conduct of judges that, even if proven to be true, would not be so serious as to warrant the judge's removal from office or compulsory retirement?

We answer the question no.

## DISCUSSION

### I.

*This Court has jurisdiction to hear and act on Judge Mattingly's petition for extraordinary relief.*

■■■ ¶ 8 This Court has power to hear and consider original actions and issue ex-

traordinary writs where the claim is made that the Court on the Judiciary, Trial Division, has exceeded its jurisdiction. Okla. Const. Article 7–A § 3(c) provides:

> In the exercise of its jurisdiction, the Court [on the Judiciary] is vested with full judicial power and authority, including the power to ... issue all manner of judicial and remedial process and writs, legal or equitable.... The specific enumeration of powers herein shall not derogate from the existence of other judicial power and authority in the Court, or from the exercise thereof in aid of its jurisdiction.

■■■ ¶ 9 In *Haworth v. Court on the Judiciary, Trial Division,* 1975 OK JUD 1, 684 P.2d 1217, we assumed original jurisdiction and issued a writ prohibiting the Trial Division from proceeding further in a matter filed against a judge. There, we held that 20 O.S.1981 § 1659 was unconstitutional to the extent that it purported to impose a mandatory duty upon the Attorney General to file an action against a judge at the direction of the Council on Judicial Complaints without the Attorney General's independent exercise of discretion.[3] We said in *Haworth,*

> We find that the Oklahoma Constitution, which created the Court on the Judiciary, by naming the officers and bodies who can invoke the jurisdiction of the Court on the Judiciary, has purposely limited this group and that it cannot be enlarged nor can the discretion of said group be limited by legislative action.

684 P.2d at 1218. The teaching of *Haworth* is that the Council on Judicial Complaints lacks jurisdiction "to invoke the jurisdiction of the Court on the Judiciary" or to substitute its own discretion for that of the officers charged with that duty by the constitution.[4]

---

3. Title 20 O.S.1981 § 1659 provided:

In the event the Council finds that the complaint should be made the subject of proceedings before the Court on the Judiciary, it shall forward all papers concerning the same, together with its findings, to the Attorney General, who shall promptly file a petition invoking the jurisdiction of the trial division of the Court on the Judiciary in accordance with Section 4(a) of Arti-

cle 7–A of the Constitution of Oklahoma. Thereafter, the matter shall proceed in accordance with the applicable constitutional provisions, statutes and rules of the said Court on the Judiciary.

4. Okla. Const. Art. 7–A § 4(a) provides:

The jurisdiction of the Trial Division of the Court may be invoked by a petition, filed either

We held in *Haworth*, and reaffirm now, that this Court has authority to assume original jurisdiction in an appropriate case. We hold, therefore, that we have jurisdiction in this matter to issue any writ that may be necessary in aid of our jurisdiction.

■ ¶ 10 We hold that the Trial Division should have set Judge Mattingly's motions, which if granted would have disposed of the matter, sufficiently in advance of the trial date to have allowed Judge Mattingly time to seek relief from this Court in the event of an adverse ruling. The jurisdictional questions raised by Judge Mattingly's motions raised serious questions as to the Trial Division's jurisdiction and were unmixed questions of law. The failure of the Trial Division to dispose of them sufficiently in advance of the trial date to afford Judge Mattingly an opportunity to seek relief from this Court before trial deprived Judge Mattingly of his due process right to test the Trial Division's jurisdiction and to avoid expending the time and money required by a trial.

## II.

*The Council on Judicial Complaints and the Court on the Judiciary are without jurisdiction to consider allegations of misconduct by a judge that, even if true, would not call for the judge's removal from office or compulsory retirement.*

¶ 11 The Court on the Judiciary was created by a series of amendments to the constitution, Okla. Const. Art. 7–A §§ 1 et seq., passed by a vote of the people in 1966. Okla. Const. Art. 7–A § 1 provides that judges

... shall be subject to removal from office, or to compulsory retirement from office, for causes herein specified, by the Court on the Judiciary.

Okla. Const. Art. 7–A § 1(a). Those causes are:

... Gross neglect of duty; corruption in office; habitual drunkenness; commission while in office of any offense involving moral turpitude; gross partiality in office; oppression in office; or other grounds as may be specified hereafter by the legislature."

Okla. Const. Art. 7–A § 1(b).

¶ 12 Okla. Const. Art. 7–A § 4 provides:

The petition [invoking the jurisdiction of the Court on the Judiciary] shall state ... the grounds *upon which his removal from office or compulsory retirement from office is sought.*

[Emphasis added.] Okla. Const. Art. 7–A § 4(a). Under §§ 1 and 4, then, proceedings properly brought under Art. 7–A must be for no other purpose than that of removing or retiring the judge who is the subject of the proceeding.

¶ 13 The quoted portions of §§ 1 and 4 expressly limit the Court on the Judiciary's jurisdiction to those matters where the respondent judge's "removal from office or compulsory retirement" is sought. Here, however the Attorney General's petition against Judge Mattingly on the relation of the Council on Judicial Complaints does not seek Judge Mattingly's removal. Instead, the Attorney General alleges only that Judge Mattingly's acts "warrant discipline."

■ ¶ 14 The Council on Judicial Complaints was created in 1974 by 20 O.S. §§ 1651, et seq. and remained largely unchanged until 1997. In 1997, 98, and 99, the Legislature passed a series of amendments to 20 O.S.1991 §§ 1651, et seq., which purported to significantly broaden the power and influence of the Council on Judicial Complaints. The jurisdictional issue presented here requires us to interpret and pass on the constitutionality of some of those changes.

¶ 15 Title 20 O.S.1999 § 1651 purports to make it the public policy of the state to

by the Supreme Court or the Chief Justice thereof; by the Governor; by the Attorney General; or by the Executive Secretary of the Oklahoma Bar Association when directed so to do by a vote of a majority of all members of its Executive Council; or by Resolution of the House of Delegates or by Resolution of the House of Representatives of the State of Oklahoma. The petition

shall state the name of the respondent; the grounds upon which his removal from office or compulsory retirement from office is sought; and such other matters as may be specified by the rules of the Trial Division. It shall be subject to amendment by order of either division of the Court.

invest the Council on Judicial Complaints with jurisdiction to determine whether complaints should "be made the subject of action before the Court on the Judiciary for the purpose of removal, *reprimand or admonition....*" [Emphasis added.] Title 20 O.S. 1999 § 1651(2)(a). The words "reprimand or admonition" did not appear in the original 1974 version of § 1651. The words "reprimand or admonition" did not appear in § 1651 until the 1998 amendment to its terms.

¶ 16 A comparison of Art. 7–A §§ 2 and 4 to the current version of 20 O.S. § 1651 shows that § 1651, by purporting to give the Council on Judicial Complaints and the Court on the Judiciary jurisdiction to act for the purpose of "reprimand or admonition," would grant jurisdiction to the Council on Judicial Complaints and the Court on the Judiciary beyond that given to the Court on the Judiciary by Okla. Const. Art. 7–A and contrary to powers vested in the Supreme Court by Okla. Const. Art. 7. Okla. Const. Art. 7 §§ 4 and 6 grant certain exclusive supervisory and administrative powers over inferior courts to the Supreme Court. Art. 7 § 4 provides:

... The original jurisdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts ...

Okla. Const. Art. 7 § 4.

Section 6 provides:

Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, *general administrative authority over all courts in this State ... is hereby vested in the Supreme Court* and shall be exercised by the Chief Justice in accordance with its rules.

[Emphasis added.] Okla. Const. Art. 7 § 6.

Thus, to interpret the powers of the Court on the Judiciary as the Attorney General would do here, seeking to merely discipline rather than remove a judge, would both grant Court on the Judiciary powers not given by

Okla. Const. Art. 7–A §§ 1 and 4 and deprive the Supreme Court of its responsibility to exercise "superintendent control" and "administrative authority" over the courts of the state mandated by Okla. Const. Art. 7 §§ 4 and 6.

¶ 17 The Supreme Court discussed whether jurisdiction of a matter before it lay in the Supreme Court or before the Council on Judicial Complaints and of this Court in *Council on Judicial Complaints v. Maley*, 1980 OK 32, 607 P.2d 1180. In holding that jurisdiction lay in the Supreme Court, the court described the limitations on the Court on the Judiciary's jurisdiction:

We must first be satisfied that jurisdiction over this proceeding rests with this Court rather than the Court on the Judiciary. Although the general subject matter concerns a complaint against a judge, the trial court's order under attack was entered in a libel action. *The Court on the Judiciary is without authority to control the actions of a trial judge in any civil action. Its jurisdiction is invoked only when a complaint has been filed with it against a judicial officer alleging one of the causes for removal or compulsory retirement specified in Article 7–A, Okla. Const., or, 20 O.S. Supp.1979 1404. Superintending control of inferior courts is vested in the Supreme Court by Article 7, Section 4, of the Oklahoma Constitution, and we therefore find that we have jurisdiction in this matter.*

[Emphasis added.] 1980 OK 32 at ¶ 7, 607 P.2d 1180. The court also observed, "The Council on Judicial Complaints is only an investigatory body. It may not adjudicate any matter *nor impose any sanction.*" [Emphasis added.] 1980 OK 32 at ¶ 11, 607 P.2d 1180.

¶ 18 In his petition, the Attorney General cites to 20 O.S. Supp.1997 § 1404(B)(2),[5] which legislatively adds to the

5. Title 20 O.S. Supp. 1997 § 1404 provides in its entirety as follows:

A. As used in this section, the term "judicial officer" includes the judges of all courts created by the state or municipalities of the state.

B. In addition to the causes specified in Article 7–A, Section 1 of the Oklahoma Constitution, the acts and omissions enumerated below shall constitute grounds for the removal by the Court on the Judiciary of a judicial officer from his office,

grounds for removal found in Okla. Const. Art. 7–A § 1(b), "Continued willful failure of a judicial officer to comply with rules and directives of the Supreme Court, the presiding judge of his administrative district, or the chief judge of the judicial district." Okla. Const. Art. 7–A § 1(b) includes "other grounds as may be specified hereafter by the legislature" as grounds for removal from office. Nevertheless, in order to pass constitutional muster any additional ground for removal set out in 20 O.S. Supp.1997 § 1404(B) must define misconduct so serious that, if proved, would call for a judge's removal.

¶ 19 The Legislature was authorized by Okla. Const. Art. 7–A § 1(b) to specify "other grounds" for the removal of judges from office but the grounds included by § 1(b)'s framers were "Gross neglect of duty; corruption in office; habitual drunkenness; commission while in office of any offense involving moral turpitude; gross partiality in office; [and] oppression in office ..." We hold, therefore, that discipline for any misconduct of a judge not serious enough to require removal or compulsory retirement is within the exclusive jurisdiction of the Supreme Court under its powers to superintend and administer the courts. The Council on Judicial Complaints and the Court on the Judiciary lack jurisdiction to reprimand, or discipline in any other way, judges whose claimed misconduct is not so serious that, if

proved, would call for the judge's removal from office.

¶ 20 In *State ex rel. Simms v. McCallister,* 1986 OK JUD 1, 721 P.2d 427, we affirmed the imposition of a four-month suspension on a judge by the Trial Division. The Attorney General argued before the Trial Division in this matter that *McCallister* stands for the proposition that the Court on the Judiciary has jurisdiction to impose sanctions other than removal or compulsory retirement. *McCallister,* however, is inapposite here as the Trial Division in that case found, with ample record support, that the judge's conduct "constitute[s] oppression in office." Further, the petitioner in *McCallister* had sought the judge's removal from office. Thus, in *McCallister,* unlike this matter, the Court on the Judiciary's jurisdiction was properly invoked because the petitioner sought the judge's removal and alleged facts to support its allegations.

¶ 21 Judge Mattingly suggests with some credibility that the complaint lodged against him by the unsuccessful litigant in the divorce case was based not on dissatisfaction with the time in which the decision was rendered but on the results of the decision. Judge Mattingly claims, without contradiction, that in the course of his eleven year career as an Associate District Judge he has seldom been reversed on appeal.

with or without disqualification to hold a judicial office in the future:
1. The acceptance of a fee, or gratuity, other than that specifically provided by law, for performing any act in a judicial officer's capacity as a judge.
2. *Continued willful failure of a judicial officer to comply with rules and directives of the Supreme Court, the presiding judge of his administrative district, or the chief judge of the judicial district.*
3. Participation by a judicial officer, while serving as such officer or while a candidate for judicial office, in any partisan political activity. But the term "partisan political activity," as used herein, shall not include the attendance by a judicial officer or by a candidate for a judicial office at a political gathering, upon payment of a nominal admission fee, for the sole purpose of campaigning in his own behalf for a judicial office.
4. Participation by a judicial officer, while serving as such officer or while a candidate for a judicial office, in any election campaign other than that for his own election to a judicial office.

5. A judicial officer becoming a candidate for any nonjudicial office or for another judicial office whose term is to commence before the expiration of his present term of office; provided that no judge holding a nonelective judgeship shall become a candidate in a race in which the incumbent seeks to retain an elective judicial office unless he first resign his appointive judgeship.
6. A judicial officer, while serving as such officer or while a candidate for a judicial office, making publicly known in his campaign material or speeches, or knowingly permitting others to make publicly known, either directly or by implication, his political party affiliation.
C. Violation by a judicial officer of the Code of Judicial Conduct as adopted by the Supreme Court of Oklahoma on July 15, 1974, or as may be thereafter amended, may constitute grounds for the removal by the court on the judiciary of a judicial officer from office, with or without disqualification to hold a judicial office in the future.
[Emphasis added.]

¶ 22 We hold that the violations of Rule 27 by Judge Mattingly, which caused no complaint by any litigant or lawyer who appeared before the judge until after he had rendered his decision, were not "Continued wilful failure . , . to comply with rules and directives." 20 O.S. Supp.1997 § 1404(B)(2). The only complaints giving rise to the Council on Judicial Complaints's investigation of Judge Mattingly's conduct were that of the losing party in a complex and hotly contested divorce action and, tangentially, that of the Council on Judicial Complaints from the late filing of other orders, which had been the subject of a proceeding the Council on Judicial Complaints had previously dismissed.

¶ 23 Obvious problems would be created by allowing the Council on Judicial Complaints to institute proceedings that sought only to reprimand or admonish judges for conduct not claimed to be so serious that the conduct required removal or retirement from office. Such problems as filing an order late, as has been alleged against Judge Mattingly, should be corrected within the traditional constitutional court system, by seeking a writ of mandamus against the tardy judge from the Supreme Court or seeking reassignment of the case from the presiding judge of the judicial district in which the tardy judge sits. The initiation of formal proceedings arising from complaints about conduct not serious enough to call for removal from the bench must not be left to a legislatively created administrative council.

¶ 24 The 1999 amendment to 20 O.S. § 1652 provides, "The Council on Judicial Complaints is an agency in the Executive Department." Title 20 O.S. Supp.1999 § 1652(A). To allow the Council on Judicial Complaints, "an agency in the Executive Branch," to institute actions against a judge, for conduct that obviously falls short of the sort of conduct that would call for removal and where removal is not sought is prohibited by the constitution. Okla. Const. Art. 7–A §§ 1, et seq. creates an extraordinary procedure meant to address an extraordinary problem: performance by a judge so substandard that his removal or forced retirement is thought to be required. We hold that the proceeding against Judge Mattingly does not rise to the level of misconduct envi-

sioned by the framers of Okla. Const. Art. 7–A §§ 1, et seq. to invoke the jurisdiction of the Court on the Judiciary. Our conclusion is buttressed by the fact that the conduct complained of against Judge Mattingly was moot before the complaint against him was filed with the Council on Judicial Complaints.

¶ 25 To the extent that 20 O.S. Supp.1999 §§ 1651, et seq. could be construed to allow the Council on Judicial Complaints to seek invocation of the jurisdiction of the Court on the Judiciary from any of the officials mentioned in Okla. Const. Art. 7–A § 4(a) for any purpose other than the removal or compulsory retirement of judges, we hold that those sections are unconstitutional.

¶ 26 We hold, for the reasons stated in this opinion, that the Council on Judicial Complaints lacked jurisdiction to institute, and the Court on the Judiciary lacks jurisdiction to consider, the allegations contained in the Attorney General's petition against judge Mattingly. It is the order of the Court, therefore, that the Attorney General's petition against Judge Mattingly should be and is hereby dismissed.

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED, WRIT OF PROHIBITION GRANTED, PETITIONER'S PETITION DISMISSED.

¶ 27 ALL JUDGES CONCUR.